Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between Plaintiff and Defendant at all times relevant to this case.
3. Plaintiff alleged on his Form 33, and Defendant denied on their Form 33R, that Defendant unilaterally stopped payment of temporary total disability to Plaintiff.
5. Following the hearing before the Deputy Commissioner, the parties stipulated that Plaintiff's average weekly wage was $538.26, and the compensation rate is $358.86.
6. The parties stipulated into evidence as Stipulated Exhibit # 1, the Pre-trial Agreement, as modified and initialed by the parties.
7. The parties stipulated into evidence as Stipulated Exhibit # 2, forms and Orders as represented in the table of contents.
8. The parties stipulated into evidence as Stipulated Exhibit # 3, medical records.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDING OF FACTS
1. At the time of the hearing before the before the Deputy Commissioner, Plaintiff was sixty-eight years of age and married with adult children. On December 23, 1996, Plaintiff was working as a truck driver with Defendant when he injured his back while on the job. On January 8, 1997, Defendant filed a Form 63, agreeing to pay without prejudice. Defendant did not subsequently deny this claim; therefore, the claim became an admitted claim.
2. Plaintiff was referred to Dr. T. Kern Carlton for evaluation and treatment beginning January 27, 1997. Dr. Carlton treated Plaintiff through March 4, 1997. After an MRI showed a herniated disk at L5-S1, Dr. Carlton referred Plaintiff to Dr. Rhyne at the Spine Center.
3. Dr. Alfred Rhyne, an orthopedic surgeon, is Plaintiff's authorized treating physician. On March 11, 1997, Dr. Rhyne performed a microdiscectomy on Plaintiff at the L5-S1 level of his spine. The surgery was unsuccessful and Plaintiff experienced residual nerve damage. Dr. Rhyne treated Plaintiff until July 1997, for residual back pain radiating into his leg.
4. On October 29, 1997, Dr. Rhyne released Plaintiff to return to work with restrictions, including not lifting more than thirty-five (35) pounds and not working more than six hours per day. Dr. Rhyne recommended that Plaintiff report for a follow-up in five weeks. At the follow-up visit on December 3, 1997, Dr. Rhyne assigned a twelve percent (12%) permanent partial impairment rating to Plaintiff's back.
5. At Plaintiff's request for a second opinion, Dr. Rhyne referred him to Dr. Michael Heafner, a neurosurgeon. On January 15, 1998, Dr. Heafner examined Plaintiff and diagnosed him with failed back syndrome. Dr. Heafner did not recommend surgical treatment for Plaintiff's residual back pain, which radiated into his leg. Dr. Heafner suggested treatment options, including a chronic pain management program, repeat epidural injections and physical therapy. Dr. Heafner agreed that Plaintiff's permanent partial impairment rating should be in the range of ten to fifteen percent (10-15%) and that Plaintiff might be able to do some light duty work. In a March 8, 1998 letter Dr. Heafner clarified his rating and assigned Plaintiff a fifteen percent (15%) impairment rating to his back. On February 4, 1998, Dr. Rhyne indicated that Plaintiff was capable of performing light-duty work and released him from care, except for follow-ups as needed. Dr. Rhyne assigned Plaintiff restrictions of no lifting over twenty pounds (20 lbs.) and restricted him to jobs with a sit or stand option.
6. Following Plaintiff's compensable injury, Defendant relocated from Charlotte to Winston-Salem. Plaintiff lived in Charlotte and was unable to return to work with Defendant due to his light duty restrictions and the relocation. There is insufficient evidence in the record to determine whether Defendant had light-duty work available that Plaintiff was capable of performing.
7. Defendant provided Plaintiff with vocational rehabilitation services following his release to light-duty work. In May 1998, Plaintiff's assigned vocational rehabilitation professional, Anne Welch, secured for Plaintiff a security guard position with Burns Security. The Initial Vocational Update that Ms. Welch Prepared dated March 31, 1998 indicated that Plaintiff had work restrictions of no lifting over thirty-five pounds (35lbs) based on the medical note from Dr. Rhyne dated October 29, 1997. Plaintiff was under the impression that the position at Burns Security was a full-time position paying between $6.00 and $7.00 per hour. On June 1, 1998, Dr. Rhyne reviewed a job description for the security guard job and ultimately approved the position. On June 8, 1998, Plaintiff was given one day of orientation and was later given his work schedule and assignments. After accepting the position with Burns Security, Plaintiff learned the position was a part-time job.
8. Plaintiff worked for Burns Security on June 13, 1998 and June 14, 1998. As part of his job responsibilities, Plaintiff was required to walk up and down stairs, which caused him to experience increased back and leg pain. Plaintiff testified that in addition to the increased pain, his legs would give away from underneath him and he would sometimes fall down when walking up and down stairs at the job site. After working two weekends, Plaintiff informed Ms. Welch that he had quit the security guard position due to his increased pain. Plaintiff was paid $191.20, for working two weekends. Plaintiff's testimony that he quit his security guard position due to increased pain and episodes of falling while walking and climbing stairs is found to be credible.
9. On June 15, 1998, Ms. Welch prepared a report documenting Plaintiff's return to work. On June 25, 1998, Defendant's adjuster, Janice Sherrill filed a Form 28T with the Industrial Commission stating Plaintiff's temporary total disability compensation was terminated on June 8, 1998, when he returned to work. On June 30, 1998 Ms. Welch sent a report to Janice Sherrill, the adjusting agent, stating that Plaintiff did not believe he could perform the job with Burns and that Plaintiff had requested authorization to see a doctor. Ms. Welch documented in her report that after she spoke with Ms. Sherrill concerning Plaintiff's request, she called Plaintiff and advised him that Defendant would not authorize another visit to his doctor.
10. Defendant continued to make temporary total disability compensation payments to Plaintiff until July 13, 1998, however. Ms. Sherrill testified that she continued to make disability payments because she was attempting to obtain documentation of Plaintiff's pay with Burns Security to determine the proper amount of temporary partial disability compensation owed to Plaintiff. On July 8, 1998 Defendant terminated all compensation to Plaintiff even though Defendant knew, or has reason to know from the reports of Ms. Welch, that Plaintiff was not working and had never worked more than part time, earning diminished wages.
11. After Ms. Sherrill denied Plaintiff's request for additional medical treatment, she terminated his vocational rehabilitation services. The Full Commission finds that Defendant had actual knowledge that Plaintiff's trial return to work was unsuccessful on or about June 30, 1998 and despite this knowledge, Defendant proceeded to terminate Plaintiff's temporary total disability compensation on July 13, 1998 and did not notify the Commission that Plaintiff was no longer working.
12. Moreover, on November 3, 1998, Defendant filed with the Executive Secretary's Office a Form 24 application to terminate or suspend Plaintiff's temporary total disability compensation after they had already terminated compensation. On its Form 24, Defendant stated as its reason for seeking suspension or termination of Plaintiff's benefits the following: "Employee returned to work alternate duty. Employee has failed to provide alternate duty wages for consideration of temporary partial disability benefits, with the exception of the period from June 12, 1998 to June 28, 1998. Employee has been released [from] treatment and has failed to elect temporary partial disability benefits. Carrier request suspension of all benefits until such time that an election of benefits is made." Defendant did not notify the Commission that Plaintiff was no longer working after June 28, 1998, or that plaintiff's compensation had already been terminated.
13. On November 23, 1998, a Special Deputy Commissioner in the Executive Secretary's Office entered an order stating that Defendant informed her on November 20, 1998, that its Form 24 should be withdrawn. The evidence indicates that Defendant had been advised that the Form 24 procedure does not apply to partial disability claims. The Order removed the matter from the hearing calendar and withdrew the application.
14. Defendant wrote several letters to Plaintiff from July 1998 through November 1998, stating it would not reinstate Plaintiff's temporary total disability compensation until it received a properly completed Form 28U requesting that compensation be reinstated after an unsuccessful trial return to work.
15. On January 25, 1999, Plaintiff requested from the Executive Secretary's Office that his temporary total disability compensation be reinstated. In this request, Plaintiff informed the Commission that Defendant stopped payment of his temporary total disability before filing its Form 24 application.
16. By letter dated February 1, 1999, Defendant responded to Plaintiff's request to reinstate benefits and enclosed a copy of its Form 28T. In its response, Defendant stated that Plaintiff had returned to work on June 8, 1998, and that Defendant continued payment of compensation until July 13, 1998. Defendant further stated that Plaintiff's compensation was not reinstated because he failed to submit a Form 28U, or medical note taking him out of work. Defendant did not advise the Commission that Plaintiff had been denied further medical treatment.
17. On March 1, 1999, the Executive Secretary filed an Order denying Plaintiff's motion to reinstate his compensation. In her Order, the Executive Secretary ruled that, "If the Plaintiff entered into a trial return to work, then the temporary total disability would appropriately be stopped pursuant to a Form 28T."
18. On February 23, 1999, Plaintiff filed his first Form 33 request for hearing, alleging that Defendant terminated his temporary total disability compensation even though the Commission had not entered a Form 24 Order. On October 15, 2003, Plaintiff filed his second From 33, alleging Defendant stopped payment of his compensation benefits without legal authority.
19. On October 6, 2003, Plaintiff filed a Form 33 request for hearing alleging that his temporary total disability compensation had been stopped in 1998, without legal authority. Defendants filed a Form 33R response to Plaintiff's requests for hearing on November 24, 2003, asserting that Plaintiff was not disabled as a result of his alleged December 23, 1996 injury, and his temporary total disability compensation had been properly terminated pursuant to the filing of a Form 28T. On March 2, 2004, Plaintiff filed an Amended Form 33, again alleging that Defendant terminated his compensation benefits without legal authority.
20. Defendant contends it properly terminated Plaintiff's temporary total disability benefits based on the filing of the Form 28T and Plaintiff is not entitled to reinstatement of compensation benefits based on his failure to file a Form 28U. Defendant has maintained this position even after Burchette v. East Coast Millwork Distributions,Inc., 149 N.C. App. 802 (2002) was decided and after the revisions to Industrial Commission Rule 404A(2).
21. At the time Defendant filed the Form 28T in this matter, Defendant was aware Plaintiff had only been offered part time employment. Defendant was aware, either at the time of filing the Form 28T, or less than a week thereafter that Plaintiff had quit his part time job on the ground that he was not able to perform the job due to his physical limitations from his injury. Defendant was aware at the time Defendant terminated Plaintiff's temporary total disability compensation that Plaintiff was not working, that Defendant had denied Plaintiff's request for additional medical treatment and Defendant had terminated Plaintiff's vocational rehabilitation services. Plaintiff testified and the Full Commission finds credible that Plaintiff could not afford to pay for medical treatment; therefore, he was unable to secure a Form 28U as requested by Defendant.
22. Although Plaintiff has been found to be capable of light duty work, the job at Burns Security did not constitute suitable employment. Plaintiff was physically unable, due to his physical limitations from his injury, to perform the duties required. The job offered was part time and the wages Plaintiff earned during the brief period he was able to work, were not indicative of his capacity to earn wages in the competitive marketplace.
23. Plaintiff has looked for other jobs since his disability compensation was terminated but has been unable to find another job. Plaintiff's efforts to locate suitable employment have been reasonable.
24. Plaintiff has established by the greater weight of the evidence that as a result of his injuries he was unable to successfully perform even the part-time work offered and that he has been unable to locate suitable employment due to his physical limitations resulting from his compensable injury. At the time of the hearing before the Deputy Commissioner, Plaintiff could not stand or sit for long periods of time, he could not sleep well, and he took Ibuprofen for pain. Additionally, Plaintiff fully cooperated with all vocational efforts and medical treatment provided by Defendant.
25. As a result of his admittedly compensable injury Plaintiff has been totally disabled from work in the competitive job market from the date of his injury on December 23, 1996 through the date of hearing before the Deputy Commissioner and continuing.
26. Plaintiff is entitled to a ten percent (10%) penalty on all compensation that was not paid at the time it was due and payable. Defendant improperly terminated Plaintiff's temporary total disability compensation on July 13, 1998. Plaintiff is entitled to a 10% penalty on all compensation owed after July 13, 1998.
27. Plaintiff contends that Defendant's termination of temporary total disability benefits based on the erroneous filing of a Form 28T, and its subsequent refusals to reinstate compensation benefits constituted stubborn, unfounded litigiousness. Plaintiff further contends that at the time Defendant filed the Form 28T, Defendant had actual knowledge that Plaintiff's trial return to work was unsuccessful; that Defendant terminated temporary total disability compensation without prior approval of the Commission and that Plaintiff should be awarded attorney fees pursuant to N.C. Gen. Stat. § 97-88.1. Plaintiff's contentions are persuasive and the Full Commission finds that Defendant's conduct herein was unreasonable and constituted stubborn, unfounded litigiousness, justifying an award of attorney fees.
28. Following the hearing before the Deputy Commissioner, the parties agreed to stipulate that Plaintiff's average weekly wage was $538.26, and the compensation rate is $358.86.
29. Plaintiff needs future medical treatment for his compensable injury to effect a cure, provide relief and/or lessen his disability.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. "The burden is on the employee to show that he is unable to earn the same wages he earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury." Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Here, Plaintiff has established by the greater weight of the evidence that his physical limitations and permanent restrictions from his compensable injury prevented him from performing the part-time work at Burns Security and he has been unsuccessful in locating suitable employment without vocational assistance, after making reasonable efforts. At the time of the hearing before the Deputy Commissioner, Plaintiff could not stand or sit long, sleep well, and took Ibuprofen for pain. Plaintiff has fully cooperated with all vocational efforts and medical treatment provided by Defendant. Without authorization for further medical treatment, Plaintiff is hindered in his ability to seek suitable employment. Accordingly, Plaintiff has proven that he has been totally disabled from working in the competitive marketplace since the date of his injury.
2. N.C. Gen. Stat. § 97-18.1(b) requires that at the time of the filing of a Form 28T, the employee has returned to work and is working. Defendant then may terminate Plaintiff's temporary total disability compensation, subject to N.C. Gen. Stat. § 97-32.1. N.C. Gen. Stat. § 97-32.1, requires that if the trial return to work is unsuccessful, the employee's right to continuing compensation shall be unimpaired unless then terminated or suspended upon the filing of a Form 24 and approval given by the Commission. N.C. Gen. Stat. §§ 97-18.1 97-32.1.
3. Defendant terminated Plaintiff's temporary total disability compensation based on their filing of a Form 28T. Defendant had actual notice of Plaintiff's unsuccessful trial return to work on or about June 30, 1998. Defendant was obligated to reinstate temporary disability compensation immediately. Any grounds Defendant may have had thereafter to terminate compensation could have been brought before the Commission by filing a Form 24 application or a Form 33 request for hearing. Plaintiff's failure to submit a Form 28U was not justification for Defendant's refusal to reinstate compensation. N.C. Gen. Stat. §§ 97-18.1 97-32.1; Commission Rules 404 and 404A.
4. In Burchette v. East Coast Millwork Distributions, Inc.,149 N.C. App. 802, 562 S.E. 2d 459 (2002), the North Carolina Court of Appeals held:
 Once [D]efendants had knowledge that [P]laintiff's trial return to work was unsuccessful, they were required to reinstate compensation. . . At the time the trial return to work was unsuccessful, the [D]efendants did not qualify for the exception listed in N.C.G.S. § 97-18.1(b). [D]efendants' remedy at that point, if they felt [P]laintiff's refusal to work was unjustified, was to file a Form 24 pursuant to N.C.G.S. § 97-18.1(c). As a result of [D]efendants' failure to follow these procedures, [D]efendants are subject to N.C.G.S. § 97-18(g).
The Burchette Court further held:
 [D]efendants contend the employee's failure to file a Form 28U following Form 28T relieves the employer of and responsibility to resume payment of disability compensation. We disagree, as Defendant' argument fails both based upon the face of the General Statutes and the Workers' Compensation Rules of the North Carolina Commission (Commission Rules).
 There is no language in the General Statutes or in the Commission Rules that mandates that the employee file a form with the Commission, Form 28U or otherwise, in order to have the employee's benefits reinstated. Commission Rule 404A(2) previously stated the employee "shall" file a Form 28U. However, Rule 404A(2) was amended in 2000 to state that if "during the trial return to work period, the employee must stop working due to the injury for which compensation has been paid, the employee should complete and file with the Commission, a Form 28U." Commission Rule 404A(2). This amendment was retroactive to 1995. See Commission Rule 404A(8) (2000). The revised Commission rule 404A(2) is now not in conflict with N.C.G.S. § 97-32.1, which has always maintained that an employee's benefits, following an unsuccessful trial return to work, cannot be "unimpaired unless terminated or suspended the thereafter pursuant to the provisions of this article." Instead, after a failed trial return to work, N.C.G.S. § 97-32.1 directs the employer that the compensation shall not be terminated without following the provisions of the General Statutes. The language directs the employer back to N.C.G.S. § 97-18-1(c), which sets forth the procedures for all termination requests other than the exceptions listed in N.C.G.S. § 97-18.1(b).
5. As a result of Plaintiff's failed trial return to work, Plaintiff is entitled to reinstatement of his temporary total disability compensation from July 13, 1998, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-32.1. Additionally, Plaintiff has proven he has been totally disabled from employment in the competitive marketplace since the date of injury. N.C. Gen. Stat. § 97-29.
6. Following the hearing before the Deputy Commissioner, the parties agreed to stipulate that Plaintiff's average weekly wage is $538.26, and the compensation rate is $358.86. N.C. Gen. Stat. § 97-2(5).
7. Plaintiff is entitled to temporary total disability compensation at a rate of $358.86 per week from the date of injury through the date of the hearing before the Deputy Commissioner and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
8. As a result of Defendant's erroneous termination of Plaintiff's temporary total disability compensation, Plaintiff is entitled to a ten percent (10%) penalty on all his unpaid installments of compensation beginning July 13, 1998. N.C. Gen. Stat. § 97-18(g).
9. Defendant's termination of all disability benefits based on the filing of a Form 28T after Plaintiff returned to part time employment, and its subsequent refusal to reinstate temporary total disability compensation benefits after Defendant knew Plaintiff's trial return to work was unsuccessful and after Defendant knew of the clarifications in Commission Rule 404A(2) in 2000 and further clarification by case law in 2002, constituted stubborn, unfounded litigiousness. At or near the time of the filing of the Form 28T, Defendant had actual knowledge that Plaintiff's trial return to work was unsuccessful. Defendant filed and later withdrew a Form 24 application to suspend or terminate compensation benefits. Defendant terminated temporary total disability compensation without prior approval of the Commission. Plaintiff should be awarded attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
10. Defendant is obligated to continue to pay all medical expenses incurred or to be incurred in the future which are reasonably related to Plaintiff's compensable injury and which tend to effect a cure, provide relief and/or lessen his disability. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney fees hereinafter provided, Defendant shall pay to Plaintiff compensation for total disability at the rate of $358.86 per week from July 13, 1998, and continuing until further Order of the Commission.
2. Defendant shall pay all medical expenses incurred or to be incurred in the future which are reasonably related to Plaintiff's compensable injury and which tend to effect a cure, provide relief and/or lessen his disability, when bills have been submitted and approved according to Commission procedure.
3. Subject to attorney fees hereinafter provided, Defendant shall pay Plaintiff a penalty of ten percent (10%) on all his unpaid installments of compensation from July 13, 1998, and continuing until further Order of the Commission.
4. A reasonable attorney's fee of twenty five percent (25%) of the compensation due Plaintiff is approved for Plaintiff's counsel and shall be paid directly to Plaintiff's counsel, payable as follows: twenty-five percent (25%) of the accrued compensation due Plaintiff shall be paid directly to Plaintiff's counsel and thereafter every fourth check due Plaintiff shall be deducted and paid directly to Plaintiff's counsel.
5. As a result of Defendant's stubborn, unfounded litigiousness Plaintiff's counsel is entitled to and Defendant is obligated to pay a reasonable attorney's fee for the time Plaintiff's counsel spent in prosecuting this matter. Plaintiff's counsel has thirty (30) days to submit his time to the Commission.
6. Defendant shall pay the costs.
This the ___ day of February 2007.
S/_______________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_____________________________ BUCK LATTIMORE CHAIRMAN